UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MICHAELE FOSTER,                                        :

               Plaintiff,                    :        OPINION & ORDER

          -v.-                             :        22 Civ. 1901 (GWG)

COMMISSIONER OF THE SOCIAL                              :
SECURITY ADMINISTRATION,
                                             :
               Defendant.                   :
-------------------------------------------------------------x

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Plaintiff Michaele Foster brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), denying her claims for disability insurance benefits and supplemental security income under the Social Security Act ("the Act"). See Complaint, filed Mar. 6, 2022 (Docket # 1) ("Compl."). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons set forth below, Foster's motion to remand is granted, and the Commissioner's cross-motion for judgment on the pleadings is denied.

I. BACKGROUND

    A. Procedural History

      On September 11, 2018, Foster filed an application for disability insurance, and on September 14, 2018, she filed an application for supplemental security income. SSA

---

[1] See Motion to Remand, filed Sept. 2, 2022 (Docket # 14); Memorandum of Law in Support of Plaintiff's Motion for Remand, filed Sept. 2, 2022 (Docket # 15) ("Pl. Mem."); Amended Notice of Motion, filed Sept. 6, 2022 (Docket # 16); Motion for Judgment on the Pleadings, filed Oct. 3, 2022 (Docket # 17); Memorandum of Law in Support of Defendant's Cross-Motion and in Opposition to Plaintiff's Motion, filed Oct. 3, 2022 (Docket # 18) ("Def. Mem."); Reply Memorandum of Law, filed Oct. 24, 2022 (Docket # 19).

Administrative Record, filed July 6, 2022 (Docket # 10) ("R."), at 202-203, 204-210. Foster's applications were denied on October 9, 2018, see R. 102-108, after which point Foster requested a hearing before an administrative law judge ("ALJ"), see R. 110-113. The hearing took place by telephone on June 11, 2020. R. 27. In a written decision dated August 24, 2020, the ALJ found that Foster was not disabled and denied her claims. R. 7-20. Foster requested a review of this decision by the Appeals Council, and the Appeals Council denied the request in a notice dated January 6, 2022. R. 1-5.

On March 6, 2022, Foster filed this action seeking review of the ALJ's decision. See Compl.

B. The Hearing Before the ALJ

At the outset of the telephonic hearing, the ALJ asked Foster about an individual who was listed as representing her but who did not join the hearing. R. 27-28. Foster said she had trouble reaching the representative. Id. The ALJ presented Foster with the option to postpone the hearing or to proceed that day, and Foster chose to proceed. R. 28-30. A Vocational Expert ("VE"), Peter Manzi, also testified at the hearing. R. 27, 57-71.

Foster testified that she was 41 years old at the time of the hearing, R. 36, and had last performed any work in October 2019, R. 46-47. Foster felt unable to work because her arms were weak, she walked with a cane, and multiple sclerosis affected her voice. R. 48. Foster lived in an apartment reached by elevator with her three children, ages 21, 12, and 3. R. 36-37. Foster had completed high school, attended some college, and obtained a cosmetology license. R. 37. Foster had worked as an administrative assistant from 2007 to 2009, R. 37-39; a freelance makeup artist from 2009-2014, R. 39-40; and an on-the-job trainer and benefits assistant from

2015-2019, R. 41-45.  She had also done consulting work and graphic design in 2019 through

June and again in October.  R. 45-47.

Foster testified that her doctor provided her with a cane in January 2020 and that in the

months preceding the hearing, she began having problems with her voice.  R. 48-49.  Foster was

not taking medication for this problem and had not yet been able to see a neurologist about it

because of quarantine protocols imposed at the beginning of the pandemic.  Id.  She rarely left

her home and had problems walking due to multiple sclerosis.  R. 49-50.  She took vitamin B3 as

well as medication for depression and anxiety, and she began treatment with a therapist in

January 2019.  Id.  Due to weakness in her arms, Foster could only carry three to four pounds on

a regular basis without significant problems, and she had problems bending due to pain in her

knees.  R. 51-52.  She also felt confused sometimes, "but not all the time."  R. 52.  Foster said

she saw a primary care doctor, neurologists, and a therapist.  R. 56-57.

Foster said she was the primary caregiver to her children, with some assistance from her

daughter in caring for her three-year-old child, but Foster said that she feeds, dresses, and bathes

the three year old.  R. 53.  Foster said her eldest daughter also goes to the grocery store for her,

does the laundry, and cleans the house.  R. 53-54.  Foster also said she listens to music and uses

the Internet and social media.  R. 54.

Following Foster's testimony, the ALJ questioned the VE.  R. 57-71.  The ALJ asked the

VE about the employability of a hypothetical person of the same age, education, and experience

as Foster, who could perform work at a "light exertional level[;] . . . could occasionally climb

ramps and stairs; cannot climb ladders, ropes, or scaffolds; can frequently balance; can

frequently stoop, frequently kneel, occasionally crouch, . . . occasionally crawl[;] . . . cannot

work at unprotected heights; cannot operate machinery having moving mechanical parts which

are exposed; and must avoid concentrated exposure to extreme heat." R. 61-62.  The VE testified that such a person could perform all of the prior work that Foster had testified to doing, as well as work as a garment folder, marker II, and bagger — the latter three all light, unskilled work.  R. 62-63.  Asked about a hypothetical person with the same experience, characteristics, and limitations who also needed to use a cane for walking, the VE said such a person would be able to perform the work of an administrative assistant, benefits clerk, makeup artist, garment folder, and marker II.  R. 64-65.  Additionally, the VE testified that such a person could perform the work of an information clerk, which the VE said was light, unskilled work.  R. 67.  Asked about adding to this hypothetical person a limitation only to perform simple, routine tasks and instructions, the VE said this matched all the unskilled work they had already discussed, but not any of Foster's actual prior work, which was all skilled or semi-skilled.  R. 68-70.

      C.  <u>The Medical Evidence</u>

Both Foster and the Commissioner have provided detailed summaries of the medical evidence.  <u>See</u> Pl. Mem. at 7-11; Def. Mem. at 4-6.  The Court directed the parties to specify any objections they had to the opposing party's summary of the record, <u>see</u> Scheduling Order, filed Aug. 16, 2022 (Docket # 13) ¶ 5, and neither party has done so.  Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for the purpose of the issues raised in this suit.  We discuss the medical evidence pertinent to the adjudication of this case below.

      D.  <u>The ALJ's Decision</u>

The ALJ denied Foster's application on August 24, 2020.  <u>See</u> R. 7.  The ALJ concluded that Foster was not "under a disability within the meaning" of the Act from July 31, 2018, through the date of the decision.  R. 11.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found at step one that Foster met the insured status requirements of the Act through December 31, 2024, had "engaged in substantial gainful activity" from January 2019 to June 2019, but "did not engage in substantial gainful activity" for a continuous 12-month period. R. 12-13.  The ALJ wrote that his findings addressed only periods where Foster had not engaged in substantial gainful activity.  R. 13.  At step two, the ALJ found that Foster had the "severe impairments" of obesity and multiple sclerosis.  Id.

At step three, the ALJ found Foster did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  R. 14.  The ALJ said he "especially considered whether the requirements of section 11.09 (multiple sclerosis) are met, or medically equaled, but . . . ultimately decided that the requirements of this section, or any other section, are not met or medically equaled."  Id.; see also 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before moving to step four, the ALJ assessed Foster's residual functional capacity ("RFC") for the relevant period.  R. 15.  The ALJ concluded that Foster had the RFC "to perform light work . . .; could occasionally climb ramps and stairs, and cannot climb ladders, ropes or scaffolds[;] . . . could frequently balance; frequently stoop; frequently kneel, occasionally crouch; and occasionally crawl[;] . . . cannot work at unprotected heights and cannot operate machinery having moving or mechanical parts which are exposed[; and] . . . must avoid concentrated exposure to extreme heat."  Id.  The ALJ said he did not include cane use restrictions because "the evidence of record does not show that claimant requires the use of a cane."  Id.  The ALJ's RFC determination included an evaluation of Foster's own testimony,

"medical progress notes from Mount Sinai Hospital," and an opinion of medical administrative consultant Dr. R. Mohanty.  R. 15-17.

At step four, the ALJ concluded that Foster was "capable of performing past relevant work as administrative assistant, makeup artist, [and] training representative and benefits clerk." R. 18.  Additionally, the ALJ opined alternatively that he adopted and accepted the VE's testimony and that Foster "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  R. 18-20.

Accordingly, the ALJ found that "[a] finding of 'not disabled' is therefore appropriate." R. 20.

## II.  GOVERNING STANDARDS OF LAW

### A.  Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence."  Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and punctuation omitted).  Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence

supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (citation and punctuation omitted). "[T]he threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original) (citation and punctuation omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citation and punctuation omitted).

B. Standard Governing Evaluation of Disability Claims by the Agency

The Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); id. § 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam) (citations omitted); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (citations omitted) (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's

impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

Foster raises three arguments in her challenge to the ALJ's decision: (1) that she did not meaningfully waive her representation at the ALJ hearing, Pl. Mem. at 18-19; (2) that the ALJ failed to develop the record of medical evidence sufficiently, id. at 13-15, and (3) that the ALJ's decision was not supported by substantial evidence, id. at 16-18. We do not address the first two issues because we find that the case must be remanded for a new hearing based on the lack of substantial evidence to support the Commissioner's decision.

The ALJ's decision relied extensively on the opinion of Dr. Mohanty, a state agency physician who considered Foster's medical records as of October 9, 2018 but who did not examine Foster.[2] R. 17, 90. Based on the records, Dr. Mohanty opined that Foster had the

_____

[2] Based on the code "32" next to Dr. Mohanty's name, R. 92, it appears Dr. Mohanty is a pediatrician. See Social Security Administration, Program Operations Manual System (POMS) DI 24501.004(B).

ability to perform light work, R. 90, and the ALJ so found as well, R. 15.  Dr. Mohanty opined

that Foster could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for six

hours per workday, and sit for six hours per work day.  R. 88.  He found she had no postural,

communicative, or manipulative limitations.  R. 89.  The ALJ found that, with some postural

limitations that had not been found by Dr. Mohanty, Foster had the ability to perform "light

work" as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b).  R. 15, 17.  Under the

regulations, "light" may mean being required to lift up to 20 pounds with "frequent" lifting or

carrying of 10 pound objects.  See 20 C.F.R. §§ 404.1567(b), 416.967(b).  There is potentially a

"good deal" of walking or standing that can be involved in light work.  Id.

The ALJ's hearing took place on June 11, 2020, R. 27, and the ALJ's decision applied to

Foster's condition through August 24, 2020, R. 7, nearly two years after Dr. Mohanty issued his

opinion.  Because of additional information that came to light after the hearing, Foster argues

that Dr. Monahan's opinion was "stale" and therefore does not qualify as evidence upon which

the ALJ could rely.  R. 16.

Where an opinion is "stale," it may not carry sufficient weight to meet the substantial

evidence standard.  As one case has recently noted:

> In general, "medical source opinions that are conclusory, stale, and based on an
> incomplete medical record may not be substantial evidence to support an ALJ
> finding."  Camille v. Colvin, 104 F. Supp. 3d 329, 343 (W.D.N.Y. 2015), aff'd,
> 652 F. App'x 25 (2d Cir. 2016).  Although "a medical opinion is not necessarily
> stale simply based on its age," Biro v. Comm'r of Soc. Sec., 335 F. Supp. 3d 464,
> 470 (W.D.N.Y. 2018), a medical opinion may be stale if it does not account for a
> plaintiff's deteriorating condition, Carney v. Berryhill, No. 16-CV-269, 2017 WL
> 2021529, at *6 (W.D.N.Y. May 12, 2017).  Remand may be warranted where
> more recent evidence in the record "directly contradict[s] the older reports of
> [plaintiff's] functioning on which the ALJ relied" and the ALJ failed to fully
> analyze the more recent evidence.  Blash v. Comm'r of Soc. Sec. Admin., 813 F.
> App'x 642, 644 (2d Cir. 2020).

<u>Michael R. D. v. Comm'r. of Soc. Sec.</u>, 2023 WL 3869022, at *4 (W.D.N.Y. June 7, 2023);

<u>accord</u> <u>Griffith v. Astrue</u>, 2009 WL 909630, at *9 n.9 (W.D.N.Y. Mar. 31, 2009) ("[T]he State

Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical

record, are not substantial evidence.") (citation omitted); <u>Suarez v. Comm'r of Soc. Sec.</u>, 2010

WL 3322536, at *8 (E.D.N.Y. Aug. 20, 2010) ("[B]ecause Dr. Weiss's opinion is both outdated

and inconsistent with Dr. Misra's more recent findings, the propositions which the ALJ relied on

Dr. Weiss's opinion for when determining Plaintiff's RFC should not have been afforded

substantial weight without further explanation.").

  Here, plaintiff had medical treatment after the hearing that strongly reflected the

possibility of a deteriorating condition.  For example, Foster reported on May 14, 2019, that she

had some "new numbness/tingling in her left foot and toes" as well as "blurry vision."  R. 452.

On July 10, 2019, Foster presented with left foot "paresthesias," left "hand shaking," and left

"abductor weakness."  R. 443.  She reported other new symptoms such as insomnia that had

"[n]ever happened in the past."  R. 440.  She also reported back pain that "[b]egan about 1 month

ago."  <u>Id.</u>  On August 19, 2019, a cervical spine MRI revealed multiple lesions throughout

cervical spinal cord and imaged portion of upper thoracic spinal cord compatible with

"demyelinating lesions."  R. 465-466.  A brain MRI on August 19, 2019, revealed multiple

scattered lesions with distribution compatible with multiple sclerosis.  R. 463-464.  On

November 13, 2019, plaintiff was noted to have left-sided paresthesias.  R. 429.  On February 12,

2020, plaintiff complained of chronic left foot and arm tingling and a "bilateral hand tremor."  R.

415-416.  She reported "dizziness" and " feeling like she was tilted towards one side."  R. 416.

She also demonstrated "patchy diminished sensation to pinprick and temperature in bilateral

extremities."  R. 418.

Additionally, Foster's own testimony reflected a deteriorating condition in that she had been prescribed a cane and was apparently using it, R. 48, and, as the ALJ noted, she had "a problem with speaking" and was "hoarse" during the hearing, R. 15, 48.

Certainly, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted).  The problem here is that the opinion regarding Foster's functional capacity so heavily relied on by the ALJ comes from a physician who not only never examined her but also did not have the benefit of two years of records following the issuance of the physician's opinion that suggested the worsening of the plaintiff's condition.  The ALJ was not in a position to rule on the significance of the later medical evidence, and his efforts to do so — for example, by repeatedly characterizing the treatment records as containing "benign" findings, R. 16-17 — runs afoul of the rule that an ALJ may not offer a "their own lay opinions to fill evidentiary gaps in the record." Russ v. Comm'r of Soc. Sec., 582 F. Supp. 3d 151, 164 (S.D.N.Y. 2022) (citation omitted).  In light of these circumstances, the Court cannot find that there is substantial evidence that would support the notion that plaintiff could lift 20 pounds, frequently lift 10 pounds, stand and/or walk for six hours per workday, and sit for six hours per work day, as found by Dr. Mohanty, R. 88, and as relied on to a large degree by the ALJ, R. 14, 17.

The case thus must be remanded.  On remand, the ALJ should seek a medical opinion as to Foster's RFC with the benefit of all of Foster's medical records.

IV.  <u>CONCLUSION</u>

For the foregoing reasons, Foster's motion to remand (Docket ## 14, 16) is granted, and

the Commissioner's cross-motion for judgment on the pleadings (Docket # 17) is denied.  The

case is remanded to the Social Security Administration for further proceedings consistent with

this Opinion.

SO ORDERED.

Dated:  September 14, 2023
        New York, New York


GABRIEL W. GORENSTEIN
United States Magistrate Judge